SAMUEL M. HICKMAN, APPELLEE, v. CHARLES JONES, APPELLANT.

FILED JULY 7, 1921. No. 21195.

1. **Public Lands: RIGHTS BASED ON SURVEY.** Original surveys of public lands by the United States government, on the faith of which property rights have been acquired, control over surveys subsequently made by the government which affect such rights.

2. **Replevin: VARIANCE.** In the affidavit for replevin, the hay in dispute was described as being in stacks on the north tier of forties in section 21, and there was evidence tending to show that it was located on the south portion of section 16, which adjoins section 21 on the north. There was no dispute as to the identity of the hay, but only as to its ownership. *Held*, that the trial court did not err in overruling defendant's motion for a directed verdict in his favor on account of the variance between the allegations of the affidavit and the proof as to the location of the hay.

APPEAL from the district court for Morrill county: RALPH W. HOBERT, JUDGE. *Affirmed.*

*McDonald & Irwin,* for appellant.

*C. G. Perry* and *Mitchell & Gantz, contra.*

Heard before LETTON, DAY and DEAN, JJ., CLEMENTS and MORNING, District Judges.

MORNING, District Judge.

This is a replevin action by plaintiff, Samuel M. Hickman, against defendant, Charles Jones, to recover a quantity of prairie hay. At the close of the evidence, at the trial in the district court, the defendant moved for a directed verdict, which motion was overruled. Thereupon

plaintiff moved the court to direct a verdict in his favor, which motion was sustained, and there was a verdict and judgment accordingly. Defendant appealed to this court.

In the replevin affidavit the hay is described as "sixty tons of prairie hay standing in stacks on the north half of the northeast quarter and the north half of the northeast quarter of the northwest quarter, section 21, township 21, range 47." There is some conflict in the evidence, and considerable doubt, as to whether the hay was cut from that portion of section 21 above described, or whether it came from ground immediately to the north, which would be on section 16 as originally surveyed. The conflict is not as to the identity of the hay, nor as to the spot from which it was cut, but as to whether that spot is to the north or to the south of the north line of section 21. Plaintiff has the fee title to that portion of section 21 from which he claims the hay was cut, which he derives by mesne conveyances from the holder of the patent from the United States government, and, at the time said hay was cut, he held a lease from the state of Nebraska upon section 16, which is a part of the public school lands granted to the state by the National government. The evidence shows that, according to the original government survey of the lands in that vicinity, section 16 lies immediately north of section 21.

It appears from the evidence that, owing to local disputes between landowners in that neighborhood as to boundaries, the United States government, in about the year 1900, employed one Alt, a civil engineer, to make a resurvey and fix boundaries there, and that, in so doing, he located section 16 in such manner as to leave a considerable strip of ground lying between the north boundary line of section 21 and section 16, as he located it, and it was from this intervening strip, which defendant refers to as "no-man's land," that defendant cut the hay in dispute. Defendant claims to have procured from the government land office what he calls a "settler's right," under which he took possession of said strip of ground,

and that, while he was so in possession, he cut said hay, and this constitutes the sole basis of his claim of title thereto. We cannot agree with him in his contention that there is anything in these facts that would in any manner tend to establish title in himself nor militate against plaintiff's title. We think it conclusively shown by the evidence that the hay in dispute belonged to plaintiff, wholly regardless of the effect of said Alt survey upon claims of parties whose rights had not become vested prior thereto, and who may have recognized and acted thereon since said survey was made. Long prior to said Alt survey plaintiff's grantors had acquired title to the land in section 21, and, at the time these rights were acquired, these two sections were adjoining each other and there was no strip of ground between them. The rights of neither the state nor of plaintiff's grantors were in the least affected by the Alt survey. Original surveys of public lands by the United States government, on the faith of which property rights have been acquired, control over surveys subsequently made by the government which affect such rights. 22 R. C. L. 282, sec. 42; *Burt v. Busch,* 82 Mich. 506; *Barringer v. Davis,* 141 Ia. 419; *Slack v. Orillion,* 13 La. 56, 33 Am. Dec. 551; *Washington Rock Co. v. Young,* 29 Utah 108, 110 Am. St. Rep. 666; *Miller v. White,* 23 Fla. 301; 5 Cyc. 946. Nor did the reference to said survey in the deed, whereby plaintiff acquired title to his land in section 21, operate to bind plaintiff by any of the results accomplished by said survey, especially as between plaintiff and defendant, there being no privity between them in said conveyance and defendant not being in a position to urge an estoppel. The description in said deed is by reference to the usual governmental subdivisions, and the reference to the Alt survey was added thereto as an alternative description, apparently under the belief, on the part of the grantor and the grantee, that there was no conflict in the two descriptions. And it can make no difference to plaintiff's title to said hay whether the spot from which it was cut was to the south or to the

north of the boundary line between sections 16 and 21.   If
it was to the south, it was upon plaintiff's deeded land in
section 21; if to the north, it was upon section 16, which
plaintiff held under lease from the state.   As to the state
and the plaintiff, there is no open space, or "no-man's
land," between said two sections from which defendant
could legally harvest hay to the prejudice of either.   And
we do not regard it as of practical importance, for the
purposes of this case, just where these two sections were
located, since, according to the original survey, the south
boundary line of the one was the north boundary line of
the other.   If said Alt, in making his survey, was en-
deavoring to relocate and reestablish the south line of
section 16 according to the original survey, his work, if it
had any result at all, fixed the north boundary of plain-
tiff's deeded land in section 21 on the same line, because
they were identical.   If, as seems probable, he was merely
trying to fix boundaries to conform to the contentions of
resident owners, and to harmonize disputes as best he
could, regardless of the original survey, then, as we have
said, this could in no manner disturb the vested rights
of the state nor of plaintiff's grantors in the two sections
referred to.   If it were a question as to whether or not
this hay came from either of said sections as originally
surveyed, then it would be of much, and perhaps decisive,
importance to definitely determine the location of the
original corners and lines, but there is no claim here by
either party but that it came from a spot of ground on one
or the other of said original sections, and the Alt survey
did not, as against the plaintiff nor the state, create a
strip of "no-man's land" between said sections.

   We think there is no merit in defendant's point pre-
sented by his motion for a directed verdict, to the effect
that the replevin affidavit locates the hay on section 21,
whereas the evidence shows that it was located on section
16, and that, therefore, there is a fatal variance between
the allegations and the proofs.   There is no dispute here
as to the identity of the hay, and this variance as to loca-

tion is immaterial. *Bilby v. Townsend,* 29 Neb. 220; *Nollkamper v. Wyatt,* 27 Neb. 565. The title to this hay is not made to depend upon identity, but the defendant asserts title in himself in the identical hay in question, and any variance between the allegations of the affidavit and the proofs as to location is waived. 23 R. C. L. 928, sec. 98.

The judgment of the lower court is

AFFIRMED.